

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0553-20

### JAMAILE BURNETT JOHNSON, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIRST COURT OF APPEALS
### HARRIS COUNTY

**MCCLURE, J., delivered the opinion of the Court. KEEL, J., concurred.**

## O P I N I O N

We granted the State's petition for discretionary review on one ground: Did the court of appeals fail to apply the standard of review correctly in its analysis of Appellant's ineffective assistance of counsel claim? We hold that it did. The medical records that the court of appeals relied upon were not included in the record; it is unclear that counsel's performance was actually deficient; and it is equally unclear

as to whether there was prejudice in the failure to secure admission of those medical records. We reverse the judgment of the court of appeals and affirm that of the trial court.

## FACTS

On November 28, 2016, Veronica Lopez, the complainant, and her husband, Jorge, drove their truck to a tire store called Truck Zone. Jorge parked their brown, 2002 Chevrolet 1500, "cab-and-a-half" with a stripe and tinted windows in the store's parking lot.

Jorge went into the store while Veronica waited in the passenger seat of the truck. The truck was unlocked, with the keys in the ignition, and the motor running. A short time later, Veronica saw Appellant riding his bicycle toward the truck. Appellant opened the driver's side door of the truck and got inside. Veronica noticed that Appellant had a screwdriver, and although he did not point it directly at her, she testified that he threatened her with it and that she was very scared. Veronica asked if Appellant worked for the store and he told her that he did not, and then was asked by Appellant if she wanted to go for a ride. Veronica testified that she was scared and she yelled and attempted to get out of the truck by opening her door and hanging onto it while Appellant accelerated backwards and forward. She landed on her feet, uninjured, and Appellant drove off.

Jorge called the police, who located the truck a short time later. As the officers approached the truck, Appellant drove off. Law enforcement followed Appellant for about forty-five minutes until he pulled over and was arrested.

At trial, Appellant testified that the truck he took belonged to him. Appellant testified that in the days before the offense, he was driving his truck, a grey, 1997 Dodge 1500 extended cab, and ran out of gas on the Trinity River bridge late one night in November 2016. Appellant testified he locked his truck, left the keys in the ignition, and left the truck behind. Eventually, law enforcement officers arrived and Appellant's truck was towed away. Appellant, who was homeless at the time, encountered the police, who were sufficiently concerned for his well-being that they took him to Spindletop Medical Center in Beaumont for a psychological evaluation. After his evaluation, treatment, and discharge, Appellant remained on the Spindletop Medical Center property without consent, and was arrested for trespassing. Following his release from jail, Appellant began walking and hitchhiking around Beaumont to look for his truck.

Appellant then walked and hitchhiked back to Houston where his mother, stepfather, cousin, and brother lived. Appellant rode a bicycle around town, looking for his truck. According to his testimony, Appellant rode by the Truck Zone store and spotted the complainant's truck, which Appellant believed was his. According to Appellant, his "mind told [him]" that it was his truck. Appellant explained that

the truck that he saw in the Truck Zone store's parking lot resembled his missing truck because it was similar in brand and body style, it had two doors, and it was an extended cab.

Appellant claimed he had a "multipurpose tool" with him while he was looking for his truck because he did not have the keys to his truck and he believed he could unlock the truck with the tool. He also testified that he did not see anyone inside the truck in the Truck Zone store's parking lot because of its tinted windows, and so he was surprised to see a woman inside "his" truck. Appellant held the multipurpose tool in his hand while he began shifting gears, but he did not point it at the woman or threaten her. Appellant said the woman inside the truck smiled at him, so he asked if she wanted a ride. Appellant testified that the woman did not respond so he "moved the truck." Appellant contends that once the woman opened her truck door, he "hit the brake" so that she could get out because he did not want her to be hurt. Appellant testified he saw law enforcement officers driving behind him, but he did not think that they were looking for him, and only stopped the truck at a red light when he saw a law enforcement officer outside his patrol car with a firearm pointed at the truck. Appellant's stepfather, Lewis Armstead, testified that "[c]oming up," Appellant had "schizophrenia or something." Armstead testified that, on the day of the offense, he had been with Appellant at Armstead's mother's house before the offense occurred. While they were there, Appellant went outside and

began rubbing grass on himself. When Armstead called out to him, Appellant "looked like he was not there." Afterwards, Appellant laid down on a railroad track and started throwing rocks. The police were called but they did not take Appellant to the hospital. After the police left, Appellant told Armstead he was going to get his truck, left on a bicycle, was gone for about twenty minutes, and returned in a truck that was not his. Appellant's mother, Gwendolyn Johnson, testified that, prior to the offense, Appellant had been in Beaumont. She testified that an Anahuac Police Department officer had called her and informed her that Appellant had been seen, in the rain, on the freeway, licking a guardrail. She testified that she did not know how Appellant got back to Houston. On the day he returned to Houston, Appellant came to her house, and while they had a conversation about where his truck was, Appellant was not able to have a "normal" conversation. When asked to describe how the conversation was not normal, she testified: "I said to him that I didn't have his truck, his brother didn't have his truck, his truck was not in Houston. I don't think he understood or believed that."

After speaking with Appellant, his mother was concerned for his physical well-being. However, she was not successful in getting assistance from local law enforcement. After Appellant's mother testified, the following exchange occurred:

> [Defense Counsel]: Judge, I don't have another witness. If I can ask to approach for one brief thing?

> THE COURT: Absolutely.

[Defense Counsel]: We're going to offer his medical records.

THE COURT: Response.

[State]: Your Honor, the State objects to relevancy.

THE COURT: Tell me the relevancy at the bench, please.

(Bench conference.)

[Defense Counsel]: These medical records support what Mr. Armstead stated earlier that he is schizophrenic and that he has mental health issues.

[State]: Judge, that all goes to punishment and not to the case in chief.

THE COURT: I'm just asking if it includes the medical records since he came into custody?

[Defense Counsel]: These—this specific set of records does not—this specific set does not include the current incarceration.

THE COURT: Okay. Do we have those records?
[Defense Counsel]: The current records?

THE COURT: Yes.

[Defense Counsel]: If I can explain. I have a portion of the current records and because he's under consistent monitoring they're not—this stamp says incomplete because they're updating daily several times a day.

THE COURT: Any response?

[State]: All of this—if we were in an insanity case or something and they had some expert to testify about these

records maybe it would be relevant, but right now there is no relevancy or foundation for this to come in in the case in chief, guilt or innocence.

THE COURT: What I have difficulty with is there's no foundation laid, nobody can support the documents that's [sic] here. I mean, that may be something you're able the [sic] arrange at a later point. I'm going to sustain the objection on the basis of foundation. Thank you.

(Bench Conference Concluded.)

## DIRECT APPEAL

On appeal, Johnson argued that his trial counsel did not provide him with effective assistance during the guilt phase of trial because counsel did not properly prepare and offer his medical records into evidence in admissible form when the medical records directly related to whether he formed the requisite intent to commit the offense of theft.

The court of appeals held that there was no "…plausible, professional reason for the failure of Johnson's trial counsel to properly prepare and offer Appellant's medical records into evidence in admissible form," and concluded that there was sufficient evidence in the record establishing that trial counsel's performance fell below an objective standard of reasonableness. The court of appeals next determined that Johnson was harmed in that, but for trial counsel's deficiency, the result of the proceeding would have been different.

Justice Goodman dissented and would have held that the record was insufficient to support the ineffective assistance claim. Justice Goodman pointed out that although Appellant filed the medical records with the court of appeals, they are not part of the record, and, according to Texas Rule of Appellate Procedure 34.1, the court cannot consider documents that are not in the record. *See Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017)(holding a claim that depends on documents that are not in the record is without merit).

Justice Goodman also wrote that the majority was incorrect to imagine that over 1000 pages of medical records would simply be given to the jury to evaluate on their own. Without an expert to interpret them, there was no error in excluding the records even if the predicate was laid. Not having an expert and not pressing for admission could have been a reasonable strategy. Counsel's reasoning is not shown by the silent record but he might have decided it was not worth the risk. In addition to Appellant's mental problems, the records show some of his criminal history, including indecency with a child, violence with hospital staff, gang issues, and drug abuse. Justice Goodman pointed out that Appellant's brief did not discuss the contents of the records so it does not present the ineffective assistance of counsel claim for review and that the majority improperly acted as an advocate in deciding which statements in the records are dispositive.

## DISCUSSION

There are several problems with the court of appeals' reversal based on ineffective assistance of counsel. First, the evidence the court relied upon was not included in the record. Second, it is unclear that counsel's performance was deficient because counsel has not had the opportunity to respond to the claim. Finally, it is questionable whether there was prejudice in the failure to secure admission of those records.

### 1. *The evidence the court of appeals relied upon was not included in the record.*

The court of appeals held that "the medical records that appellant's trial counsel sought to have admitted into evidence at trial would have provided extensive insight into appellant's severe mental health issues and his seemingly abnormal behavior." *Johnson v. State*, 606 S.W.3d 386, 401 (Tex. App.—Houston [1st Dist.] 2020). The court then went into detail about what was contained in over 1000 pages of Johnson's medical records.

This was error. Texas Rule of Appellate Procedure 34.1 states that the appellate record consists of the clerk's record and, if necessary to the appeal, the reporter's record. An appellate court cannot consider an item that is not a part of the record on appeal. *See* TEX. R. APP. P. 34.1; *Jones v. State*, 478 S.W.2d 937 (Tex. Crim. App. 1972); *Martin v. State*, 492 S.W.2d 471, 472 (Tex. Crim. App. 1973).

Appellant's medical records were not filed with the trial court, nor were they part of an offer of proof or a formal bill of exceptions, and there was no motion for new trial where the records were made an exhibit. It is unclear how the court of appeals obtained these records, but it was improper to consider them. Because the medical records were not a part of the record, the court should not have considered them on appeal.

**2. The court improperly presumed deficient performance from a silent record.**

The court of appeals held that the medical records provide context for why Appellant would have believed the truck was his when another person would not. The court concluded that because counsel did not understand the predicate for admitting this evidence, the jury did not get a full opportunity to consider this defensive argument negating intent. Therefore, the court concluded, counsel's performance was deficient.

Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). "It is not sufficient that the appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence. Rather, the record must affirmatively demonstrate trial counsel's alleged ineffectiveness." *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007). The defendant must overcome "the strong presumption that counsel's conduct fell within

the wide range of reasonable professional assistance" and that the conduct constituted sound trial strategy. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). For an appellant to defeat this presumption, "[a]ny allegation of ineffectiveness must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness." *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996).

Trial counsel should generally be given an opportunity to explain his actions before being found ineffective. *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). In the face of an undeveloped record, counsel should be found ineffective only if his conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). A silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003); *Thompson*, 9 S.W.3d at 814. Thus, if the record does not contain affirmative evidence of trial counsel's reasoning or strategy, we presume counsel's performance was not deficient. *See Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002).

At trial, Appellant's counsel attempted to offer Appellant's medical records into evidence. Rule of Evidence 803(6) allows for admission of medical records so long as counsel provides testimony of a records custodian or an affidavit that complies

with Rule 902(10). Appellant's counsel offered the records without a witness to satisfy this predicate, and the trial court rejected the medical records from admission. The appellate court held that counsel's misunderstanding of the predicate requirement for medical records was not a valid strategy. Because the court of appeals held there is no plausible strategy to explain this failure, counsel's performance was deficient.

The court of appeals' analysis of the first *Strickland* prong is incorrect because the majority presumed that counsel erred based on a silent record, without giving counsel the opportunity to explain the reasons for his conduct. *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002) (holding that the reasonableness of counsel's choices often involves facts that do not appear in the appellate record).

The court of appeals' analysis runs contrary to the jurisprudence of this Court which stands for the opposite: courts may not find deficient performance from a silent record if there is any reasonable strategy that might support counsel's decision. *Nava v. State*, 415 S.W.3d 289, 308 (Tex. Crim. App. 2013). Counsel gets the benefit of the doubt from a silent record, and courts must assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined. *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011).

Justice Goodman noted in his dissent that the medical records contained information regarding Appellant's significant criminal history, including

convictions for indecency with a child and unlawful possession of a weapon, past violent behavior with medical staff and a friend, gang issues, and drug abuse. It might very well have been counsel's strategy all along not to pursue admission of the medical records, but instead, to allow the jury to know medical records existed in support of the mental impairment claim, without risking having any of the jurors see the harmful information that was contained in the records.

Therefore, contrary to the court of appeals holding, there *is* a plausible strategy to explain counsel's failure to introduce Appellant's medical records. Of course, there is also the possibility that defense counsel did not have a valid, strategic reason as to why he did not introduce Appellant's medical records, but instead did not know how to lay the proper predicate for admission of the medical records. But since counsel was not given the opportunity to explain his trial strategy, in the absence of anything in the record to show the tactics or strategic reasoning of counsel, we decline to conclude counsel's performance was deficient in this instance.

### 3. *The court improperly found prejudice.*

The court of appeals also held that Appellant was prejudiced because the medical records support Appellant's claim that he did not have the intent to commit theft. The court acknowledged that Appellant's defensive theory was that Appellant lacked the requisite intent to commit the offense of theft because Appellant believed that the truck he took from the Truck Zone store's parking lot was *his* truck. The court

of appeals noted that whether or not Appellant had the intent to deprive the complainant of the property was "hotly contested" at trial. *See* TEX. PENAL CODE ANN. § 31.03(a).

Under the second prong of *Strickland*, a defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. If the deficient performance might have affected a guilty verdict, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. *Miller v. State*, 548 S.W.3d 497, 499 (Tex. Crim. App. 2018). An appellate court must examine the totality of the representation and the evidence in evaluating the effectiveness of counsel. *Thompson*, 9 S.W.3d at 813; *Miller*, 548 S.W.3d at 499. Failure to make the required showing of sufficient prejudice defeats an ineffectiveness claim. *Thompson*, 9 S.W.3d at 813.

The court of appeals erred in its prejudice analysis by looking only at the possible benefit from Appellant's medical records instead of the totality of the evidence supporting his claim. Specifically, the court of appeals discussed the following testimony which supported this theory:

- Appellant's stepfather testified that Appellant was not in a normal mental state and was not in his right mind that day.

- Appellant told his stepfather that he was leaving to get his truck and he returned with a truck that was not his.
- Appellant's mother testified to his mental state, and the fact that he did not understand that his truck was not in Houston.
- Appellant testified about the incident with his truck in Beaumont; being taken for a psychological evaluation and his subsequent arrest; the search for his truck in Beaumont and Houston; and the fact that his "mind told [him]" that the truck at the tire store was his despite the differences between the vehicles. He repeatedly referred to it as "*my* truck."

The court of appeals also noted that, in his opening and closing statements, defense counsel highlighted Appellant's behavior and belief that the truck was his. Therefore, according to the court of appeals, the "medical records would have provided extensive insight into Appellant's severe mental health issues and his abnormal behavior." The court of appeals then (improperly, *supra*) considered the medical records which included:

> "…that appellant has been diagnosed with mental health disorders, including psychotic disorder with delusions, antisocial personality disorder, schizophrenia, paranoid schizophrenia, depression, and bipolar disorder, and appellant has been prescribed many antipsychotic and antidepressant medications over the years. Appellant has also suffered a head injury in the past and has a 'dull range of intellectual functioning.' In the medical records, appellant's mental health issues are described as significant, severe, and chronic. Appellant's mental health issues cause him to be unable to stay focused or recall why he is present at certain places. These issues also cause appellant to engage in inappropriate and bizarre behavior. Appellant lacks self-awareness, hallucinates, is paranoid, and has "little insight into [his] own behavior." Appellant's insight and judgment are impaired, he is unaware of his abnormal behavior, and he sees his abnormal behavior as 'normal.'…And the records show

> that appellant has a history of not taking his medication…appellant's family had appellant involuntarily admitted for mental health treatment after he engaged in severe irrational and abnormal behavior…"

The court concluded that since the medical records provide context for why Johnson would have believed the truck was his when another person would not, and because counsel did not understand the predicate for admitting this evidence, the jury did not get a full opportunity to consider this defensive argument negating intent. Therefore, according to the court of appeals, Appellant was prejudiced by counsel's deficiency.

As previously discussed, the court of appeals erred in conducting its deficiency analysis under the first prong of *Strickland* since the medical records were not part of the record. Likewise, the court of appeals erred in conducting its prejudice analysis under the second prong of *Strickland* by, once again, considering medical records that were not a part of the record. Because this record does not disclose counsel's reasons for his conduct, and a legitimate trial strategy is a possibility, we cannot find counsel deficient. *See Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007). Therefore, there is no reason for us to conduct a second prong prejudice analysis.

We are not deciding whether Appellant did or did not receive effective assistance of counsel during trial. That may be saved for another day.[1] However, we are unwilling to affirm the court of appeals' conclusion that, with the record provided, Appellant successfully defeated the strong presumption that the decisions of counsel during trial fell within the wide range of reasonable professional assistance. *See Thompson,* 9 S.W.3d at 814.

## CONCLUSION

The evidence in the record, as it exists, is insufficient to support the conclusion reached by the court of appeals. Since the court of appeals relied upon medical records that were not included in the record, and counsel's ineffectiveness is not apparent from the record, the court of appeals failed to apply the standard of review correctly in its analysis of Appellant's ineffective assistance of counsel claim. We reverse the judgment of the court of appeals and affirm that of the trial court.

Delivered: June 16, 2021

PUBLISH

---

[1] Appellant may resubmit his claim via an application for writ of habeas corpus. The general doctrine that forbids an application for writ of habeas corpus after the direct appeal has addressed the issue does not apply in a claim for ineffectiveness of counsel. *See Oldham v. State*, 977 S.W.2d 354, 363 (Tex. Crim. App. 1998)*; Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997). A writ filed pursuant to article 11.07 of the code of criminal procedure would provide an opportunity for trial counsel to explain why he did not prepare and offer Appellant's medical records into evidence. *See* TEX. CODE CRIM. PROC. art. 11.07.